UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANPREET SINGH,<br><br>                              Petitioner,<br><br>v.<br><br>WILLIAM BARR, United States Attorney General; KEVIN MCALEENAN, Acting Secretary of Homeland Security; GREGORY J. ARCHAMBEAULT, Field Office Director for Detention and Removal, U.S. Immigration and Customs Enforcement; JOHN RATHMAN, Imperial Regional Detention Facility; DEPARTMENT OF HOMELAND SECURITY,[1]<br><br>                              Respondents. | Case No.:  18-CV-2741-GPC-MSB<br><br>**ORDER GRANTING HABEAS PETITION**<br><br>**[ECF No. 1.]** |

Petitioner Manpreet Singh, an Indian national, appears before the Court on a petition for writ of habeas corpus, 28 U.S.C. § 2241.  Mr. Singh has been detained by Immigration and Customs Enforcement ("ICE"), a division of the United States

---

[1]    Pursuant to Fed. R. Civ. P. 25(d), Secretary Kirstjen Nielsen is substituted by Acting Secretary Kevin McAleenan and Acting Attorney General Matthew Whitaker is substituted by William Barr.

Department of Homeland Security ("DHS"), since February 23, 2018. Mr. Singh's petition contends that his detention has exceeded the statutory limits, cannot be justified without a further, constitutionally-adequate bond determination, and is so prolonged that it has violated his due process rights. The matter is fully briefed. (ECF Nos. 6, 7.)

**I.    Background**

    **A. Factual Background**

Mr. Singh is a 23 year old Sikh man who was born in India's Punjab Province. (ECF No. 1, at 6.) While in India, Mr. Singh was politically-active and worked for the Mann party. Mr. Singh indicates he was targeted and attacked by individuals of a rivaling party which sought to recruit him, and that he left for the United States to seek asylum on that basis. (*Id.*)

On February 10, 2018, Mr. Singh "entered the United States without inspection, about one-half mile west of the Calexico port of entry." (ECF No. 6, at 2.) He was apprehended and placed in expedited removal proceedings. (*Id.*) On February 23, 2018, Mr. Singh was placed in detention pursuant to 8 U.S.C. § 1226(a), or Section 236(a) of the Immigration and Nationality Act ("INA"). (ECF No. 1, at 3.) During this time, Mr. Singh was referred for a credible fear determination, which he passed. (ECF No. 6, at 3, ECF No. 6-1, at 9.)

On July 9, 2018, an Immigration Judge ("IJ") conducted a custody determination hearing wherein the IJ concluded that Mr. Singh was not eligible for release because he was an "extreme" flight risk. (ECF No. 6-1, at 21.) The IJ later memorialized his findings in an August 14, 2018 Bond Memorandum. (ECF No. 6-1, at 23–26.) In the Bond Memorandum, the IJ explained that a custodial alien proceeding under section 236(a) of the INA "must establish to the satisfaction of the Immigration Judge that he or she does not present a danger to persons or property, is not a threat to national security, and does not pose a risk of flight." (*Id.* (citing *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999), *Matter of Guerra*, 24 I&N Dec. 37, 40–41 (BIA 2006).)

The IJ found that Mr. Singh, a high school graduate with no criminal background or prior immigration violations, presented no danger to persons or national security. Meanwhile, the record shows that Mr. Singh gave evidence of a family friend who would sponsor him in Texas while he awaited the outcome of his asylum application. However, Mr. Singh was unable to provide a valid passport, however, since his passport was confiscated by the Mexican authorities when he traveled through the country en route to seek asylum in the United States. Attempts by Mr. Singh's family to retrieve the passport through the Mexican consulate prior to the bond hearing proved unavailing, and Mr. Singh sought to "corroborate his identity by providing his income tax card, voter identification card, and driver's license." (*Id.* at 24.)

At the proceeding, the government questioned why Mr. Singh applied for asylum in the United States where he had no family, suggesting that he might have instead traveled to Greece, where his father lived. Mr. Singh indicated that his father did not have lawful status in Greece, that he had never traveled to Greece, and that in any event, he had not seen his father since approximately 2001, several years before the latter left India. The IJ concluded that Mr. Singh was an "extreme flight risk," given his nonresponsive demeanor and unsatisfactory responses to being questioned about why he chose to come to the United States. (*Id.* at 25.)

Finding that "the respondent did not meet his burden to show that he has sufficient equities to mitigate his significant flight risk," the IJ denied bond. *Id.* Mr. Singh appealed the IJ's custody determination to the BIA.

On August 21, 2018, an IJ held a hearing on Mr. Singh's claim for asylum, his application for withholding of removal, and request for relief under the Convention Against Torture. (ECF No. 6, at 3.) That hearing resulted in negative determinations for Mr. Singh; as a consequence, Mr. Singh was ordered removed back to India. Mr. Singh appealed the asylum determination on September 13, 2018, and on January 18, 2019, the BIA affirmed the IJ's removal order. (*Id.*) On February 19, 2019, Mr. Singh appealed

the BIA's decision to the Ninth Circuit. *See Manpreet Singh v. William Barr*, Ninth Circuit Docket No. 18-70409.

Mr. Singh remains in custody pending the litigation over his asylum claim. Since his July 9, 2018 bond redetermination, Mr. Singh has not received a subsequent bond redetermination. His appeal of the July 9, 2018 bond determination was denied by the BIA by way of an order issued October 11, 2018. (ECF No. 1, at 2; ECF No. 6-1, at 31.)

## B. Procedural Background

Mr. Singh filed the instant habeas petition on December 5, 2018. The government submitted a traverse on February 11, 2019, and Mr. Singh filed a reply on February 24, 2019. During this entire time, Mr. Singh has remained in immigration detention.

Mr. Singh argues that he is detained under 8 U.S.C. § 1226(a), and that the particular facts of his detention render it unlawful both as a matter of statute and of Constitutional law. First, Mr. Singh asserts that he has been subjected to prolonged detention in contravention of the "basic purpose" of 8 U.S.C. § 1226(a), which is limited to "assuring the alien's presence at removal," and that his detention is therefore not authorized by any statute. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). The length of his detention, according to Mr. Singh, also contravenes the Fifth Amendment's Due Process guarantee. Third, he argues that his prior bond determinations were arbitrary and capricious because the agency used the wrong legal standards. Finally, Mr. Singh contends that prolonged detentions without additional bond redetermination hearings violates due process.

Mr. Singh requests, as a remedy, an order which would order his immediate release from custody. In the alternative, he requests a hearing before this Court, "an immigration judge, or another neutral adjudicator at which Respondents will bear the burden to prove that Petitioners' continued detention remains justified." (ECF No. 1, at 16.) Mr. Singh also requests attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, in the event he prevails.

The government, in its traverse, argues that Mr. Singh's detention is authorized not by 8 U.S.C. § 1226(a), but rather by 8 U.S.C. § 1231(a). It further contends that Mr. Singh has failed to exhaust administrative remedies, that the Court lacks habeas jurisdiction, and that he has no right to another bond redetermination under either detention scheme.

## II.    Statutory Basis for Detention

As a preliminary matter, the Court must address the statutory basis for Mr. Singh's present detention.

The parties dispute whether the government's authority to detain Mr. Singh derives from § 1226(a), under which the Attorney General has the discretionary authority to detain an alien "pending a decision on whether the alien is to be removed from the United States," or § 1231(a)(2) and (a)(6), under which the Attorney General has the authority to detain aliens "during" and "beyond" their "removal period." This distinction is one with an acute difference: "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057–58 (9th Cir. 2008).

The parties agree that § 1226(a) provided the statutory authority for Mr. Singh's initial detention in February of 2018. However, the government posits that the basis for detention shifted over to § 1231(a)(2) on January 18, 2019, when the BIA affirmed and made administratively final the IJ's removal order. (ECF No. 6, at 2.)[2] Mr. Singh counters that the pendency of his appeal of the BIA decision to the Ninth Circuit (and the concurrently-filed request for a stay of removal), places his detention back within the § 1226(a) framework. (ECF No. 7, at 5.)

_____

[2]    The government's traverse is dated February 11, 2019, i.e., before Mr. Singh filed his appeal of the BIA decision on asylum to the Ninth Circuit.

The Ninth Circuit has given the instant debate thorough treatment in *Prieto-Romero*.  There, the Court noted that Section 1231(a) authorizes detention in only two circumstances: "[d]uring the removal period," where detention is mandatory, *see* § 1231(a)(2), and "beyond the removal period," where the Attorney General "may" detain an alien who falls within one of the three categories specified by statute.  *See* § 1231(a)(6).  The "removal period" itself ordinarily lasts 90 days, but does not begin until the *latest* of the following:

>    (i)   The date the order of removal becomes administratively final.

>    (ii)  *If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.*

§ 1231(a)(1)(B) (emphasis added).  "The statute makes clear that when a court of appeals issues a stay of removal pending its decision on an alien's petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal."  *Prieto-Romero*, 534 F.3d at 1059.

As the Court noted, however, the statutory text does not specifically opine on the instant situation, where the alien has requested judicial review, but no final order has issued.  *See id.* at 1059 n.5 ("[T]he time between an alien's filing of a petition for review and [the Court of Appeals] issuance of a stay of removal falls within a lacuna in the statutory text.").  Notwithstanding this "inartful[] draft[ing]," the Ninth Circuit determined that the "more sensible reading of the statute is that if an alien files a timely petition for review and requests a stay, the removal period does not begin until the court of appeals (1) denies the motion for a stay *or* (2) grants the motion *and* finally denies the petition for review."  *Id., see also Mariscal–Sandoval v. Ashcroft*, 370 F.3d 851, 856 (9th Cir. 2004) (explaining that the Ninth Circuit would vacate a stay of removal only upon issuance of mandate because the "'finality of an appellate order hinges on the mandate'").  Thus, petitioners detained awaiting a court of appeals' determination are deemed in custody pursuant to § 1226(a).

18-CV-2741-GPC-MSB

As of this writing, the Ninth Circuit has neither denied Mr. Singh's motion for stay nor his petition for review. Accordingly, the § 1231(a) removal period has not yet begun, and Mr. Singh's detention must be justified, if at all, under § 1226(a).

## III.    Detention Pursuant to § 1226(a)

Section 1226 provides the framework for the arrest, detention, and release of non-citizens, such as Mr. Singh, who are in removal proceedings. 8 U.S.C. § 1226. Section 1226(a) grants the Attorney General discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236(d)(1). For each subsequent bond redetermination, an alien's request may be considered "only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). The IJ's bond decision is appealable to the BIA, 8 C.F.R. § 1003.19(f).

## IV.    Exhaustion of Administrative Remedies

The government argues at the outset that the Court should not entertain the petition because Mr. Singh did not exhaust his administrative remedies. Specifically, the government notes that Mr. Singh never sought to move for a subsequent bond redetermination after his July 9, 2018 denial.

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). However, administrative exhaustion by those seeking relief under § 2241 is a prudential, not jurisdictional, prerequisite in the

Ninth Circuit, and can thus be waived. *Trinidad v. Sessions*, No. 3:17-CV-06877-JD, WL 2010618, at *1 (N.D. Cal. Apr. 30, 2018). Futility is one of the grounds for waiver. *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). An action is futile if the BIA's view is "already set" or the outcome is "very likely." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 74748 (9th Cir. 1991) (holding petitioner need not exhaust administrative remedies to challenge a translation policy which the BIA had announced and reaffirmed).

Here, the administrative remedy held out by the government—i.e., a subsequent redetermination hearing pursuant to 8 C.F.R. § 1003.19(e)—is illusory. Although Mr. Singh can theoretically seek a bond redetermination, that regulation requires changed circumstances. *See* 8 C.F.R. § 1003.19(e). Mr. Singh avers that nothing has changed since the last time he moved to be considered for release on bond; his basis for seeking another determination is that the IJ applied the wrong legal standards to an unchanged set of facts. Because the BIA, on October 11, 2018, affirmed the legal standard which Mr. Singh has contended is wrong, the Court sees no reason why an IJ would not rely on the same standard upon reexamination. Accordingly, it is "very likely" that Mr. Singh would again be denied bond. *El Rescate Legal Servs.,* 959 F.2d at 747–48. Exhaustion would thus be futile.

The Court waives the exhaustion requirement and consider the merits of Mr. Singh's claim for a bond hearing. *See Soto v. Sessions*, No. 18-CV-02891-EMC, 2018 WL 3619727, at *2 (N.D. Cal. July 30, 2018) (waiving administrative exhaustion for redetermination under 8 C.F.R. § 1003.19(e) because "no relevant circumstances have changed").

## V.    Length of Detention (Statutory and Constitutional Claims)

Mr. Singh has been in ICE detention since February 23, 2018. He argues that his detention has become prolonged and that Congress has not through § 1226(a) of the INA, authorized a detention of his length. He also raises a Constitutional claim that his

continued detention has become so prolonged that it is no longer reasonably-related to its purpose of securing him in preparation of removal. (ECF No. 1, at 14–15.)

At approximately one year and six months, Mr. Singh's detention is not insignificant. However, the Court holds that the government has authority to detain him under § 1226(a). The Court also finds that his detention comports with substantive due process because the purpose of his detention is still reasonably related to the government's purpose of effectuating his removal; he faces a significant likelihood of removal to India once his judicial and administrative review process is complete.

## A. The Statutory Claim Fails Under *Jennings*

First, the Court addresses Mr. Singh's statutory argument that § 1226(a) itself proscribes the Attorney General from placing an alien in prolonged detention. This argument is foreclosed by the Supreme Court's decision in *Jennings v. Rodriguez*, --- U.S. ----, 138 S. Ct. 830 (2018), which overturned the Ninth Circuit's decision in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).

In *Rodriguez v. Robbins*, the Ninth Circuit employed the canon of constitutional avoidance to interpret several detention provisions of the INA to require "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Jennings*, 138 S. Ct. at 847. In other words, the Ninth Circuit read into the INA an implicit guarantee, grounded in due process concerns, of individualized redetermination hearings. But this construction of the statute did not survive Supreme Court scrutiny. Under the High Court's reading, the plain text of the detention provisions at issue, including 1226(a), unambiguously authorized detention pending resolution of removal proceedings and did not plausibly suggest a 6-month limitation or periodic bond hearings. "Nothing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." *Jennings*, 138 S. Ct. at 847.

Although the parties in *Jennings* briefed the constitutional question—i.e., whether § 1226(a) would violate due process if it permitted "arbitrary prolonged detention,"—the

9

Supreme Court "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individualized bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018). In deciding in the negative, the Supreme Court held that the only exceptions to indefinite detention (and the only procedural safeguards required) were those expressly set forth in the statutes or related regulations. Notably, § 1226(a) is silent on the length of detention terms and imposes no obligation to conduct bond redetermination hearings at sixth month intervals.

*Jennings*, then, squarely forecloses any argument that § 1226(a) itself imposes a limit on the length of Mr. Singh's detention.

## B. The Constitutional Claim Fails Because There is a Reasonable Likelihood of Removal

However, as many courts have observed since, *Jennings* did not address the constitutional question—whether due process itself permits for prolonged detention of an alien. *See Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) (observing how the *Jennings* Court remanded to the Ninth Circuit on the constitutional question, which in turn "remanded to the district court to determine 'the minimum requirements of due process for noncitizens detained under each statute'" (citation omitted)). No guidance has issued on remand, but the Ninth Circuit has, post-*Jennings*, expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d at 256.

At this point, it early to scry the tea-leaves for the constitutionality of prolonged detentions in *Jenning*'s wake. Thankfully, however, the Court need not engage in any judicial divination to resolve the instant case.

Even assuming that the due process analysis *pre-Jennings* applies, Mr. Singh has not shown that his detention is impermissibly prolonged. The principal case cited for due process violations inherent in "detention that is indefinite and potentially permanent," is

*Zadvydas v. Davis*, 533 U.S. 678, 696 (2001). In *Zadvydas*, the Supreme Court construed post-removal period detention under § 1231(a)(6) with respect to several aliens who had experienced detentions of seemingly-interminable length. Some were stuck in detention limbo because the designated removal countries refused to accept them, and others because the United States lacked a repatriation treaty with the receiving country, *id.* at 684–686. The Court noted that "basic purpose" of immigration detention was to "assur[e] the alien's presence at removal," and that this basic purpose would not be served by detaining aliens whose removal was not "reasonably foreseeable." *Id.* at 699. The Court decided the case in favor of the aliens on statutory grounds, but noted that the detention statute would "raise a serious constitutional problem," if it operated to "authorize long-term detention of unremovable aliens." *Id.* at 697, 690.

Unlike in *Zadvydas*, Mr. Singh has not pleaded any diplomatic difficulties which would encumber removal to India and render him an unremovable alien. "There is nothing, such as a lack of a repatriation agreement with his home country or a finding that he merits mandatory relief from removal, that would prevent [Mr. Singh's] removal to [his country of origin] if he is ultimately unsuccessful in his petition for review." *Prieto-Romero*, 534 F.3d at 1065. Nor does the temporary stay of removal effectuated by Mr. Singh's petition to the Ninth Circuit change the due process analysis for any elongation of his detention term. "Judicial review . . . is subject to strict procedural rules," which provides "satisfactory assurance" that Mr. Singh's "petition for review will be resolved with reasonable expedition." *Prieto-Romero*, 534 F.3d at 1064–65 (citation and brackets omitted).

At this point, Mr. Singh's petition with the Ninth Circuit has been pending for seven months, and while the intervening detention has been "lengthy," it has not yet become "indefinite." *Id.* at 1065. Accordingly, Mr. Singh "foreseeably remains *capable* of being removed—even if it has not yet finally been determined that he *should* be removed—and so the government retains an interest in 'assuring [his] presence at removal.'" *Id.* (citing *Zadvydas*, 533 U.S. at 699).

The Court concludes that the government's detention of Mr. Singh has, to date, offended neither the Constitution nor the INA.

## VI. Lack of Adequate Bond Hearing (Statutory and Constitutional Claims)

While Mr. Singh cannot, at this juncture, prove that his continued detention amounts to Constitutional error, the length of his detention and the circumstances of his original § 1226(a) bond redetermination, compel the Court to grant his request for a new bond redetermination hearing pursuant to the Fifth Amendment's Due Process Clause.[3]

Mr. Singh's due process arguments are two-fold. First, he argues that § 1226(a) detainees have a right to an adequate bond hearing at which "the government [and not the alien] bears the burden to prove" the necessity of further detention. (ECF No. 1, at 12–13.) This kind of Constitutionally-adequate hearing, he argues, was denied at the IJ's July 9, 2018 custody hearing. Second, Mr. Singh argues that the lengthy passage of time since July 9, 2018—i.e., approximately 1 year and 2 months—obligates the government to afford him an additional hearing.

### A. Claim that the IJ's July 9, 2018 Bond Redetermination was Arbitrary and Capricious

Mr. Singh contends that the government acted arbitrarily and capriciously in denying him bond, first at the original custody hearing, i.e., his July 9, 2018 bond redetermination (ECF No. 6-1, at 21–26), and then again when the BIA affirmed the IJ's determination on October 11, 2018 (*id.* at 31).

According to Mr. Singh, the government's denial of bond was based on an incorrect legal standard. (*See* ECF No. 1, at 15 (alleging that the government's "failure to apply the appropriate legal standards in determining whether to release him on parole is arbitrary and capricious").) Mr. Singh asserts that the proper legal standard would be one

---

[3]     Mr. Singh has also asserted a statutory version of this argument, claiming that § 1226(a) requires bond redetermination hearings every sixth months and that the government should bear the burden of proof at any such hearing. Because this challenge is squarely foreclosed by *Jennings*, the Court will focus on the Constitutional arguments.

which placed the burden of proving ineligibility for bond on the government, and that the IJ, and the BIA, were wrong to shift the burden to *him* to prove eligibility under the *Guerra* factors.

## 1. Habeas Jurisdiction

At the outset, the Court must address the government's assertion that the Court lacks habeas jurisdiction over the IJ's bond redetermination.

The government construes Mr. Singh as making out a challenge to IJ's factual custody determination, and points out that an IJ's factual findings and discretionary decisions are impervious to attack upon habeas. (ECF No. 6, at 7.) It argues that this type of challenge falls outside the bounds of § 2241 habeas review, *see* 28 U.S.C. § 2241; *Gutierrez-Chavez v. INS*, 298 F.3d 824, 827 (9th Cir. 2002) (Habeas jurisdiction does not authorize review of "discretionary . . . decisions made by the executive branch that do not involve violations of the Constitution."), and is expressly disallowed by 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien, or the grant, revocation, or denial of bond or parole.").

The Court, however, disagrees with the government's characterization of Mr. Singh's petition. Mr. Singh's petition targets not so much the IJ's factual or discretionary determinations as it does the legal standards used by the IJ (and later, the BIA), which placed the burden of proving eligibility for release on Mr. Singh, rather than the government. To wit, the object of his petition is a new redetermination hearing before an IJ where the government "will bear the burden to prove that [his] continued detention remains justified because [he] presents a danger or flight risk." (ECF No. 1, at 7.) Mr. Singh's challenge, then, is plainly legal in nature; he contests that his prior hearing was legally inadequate because it was not conducted under procedures required by Due Process—i.e., with the burden of proof on the government.

This kind of challenge is cognizable on a habeas petition. As the government acknowledges, § 1226(e) does not preclude habeas review of asserted legal or constitutional error by DHS. (*See* ECF No. 6, at 7.) Indeed, § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law," which, as the Ninth Circuit has explained, "includ[e] 'application of law to undisputed facts, sometimes referred to as mixed questions of law and fact.'" *Singh*, 638 F.3d at 1202 (quoting *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam)). Moreover, § 2241 was enacted to vindicate precisely the type of claim made by Mr. Singh: "[h]abeas is available to claim that the [Department of Homeland Security] somehow failed to exercise discretion in accordance with federal law or did so in an unconstitutional manner." *Gutierrez-Chavez*, 298 F.3d at 828.

Indeed, district courts have found jurisdiction to lie where, as here, the petitioner asserts denial of due process stemming from a "immigration bond system," in which aliens detained "pursuant to § 1226(a) must bear the burden of proving they are not dangerous and are not flight risks." *Aparicio-Villatoro v. Barr*, No. 6:19-CV-06294-MAT, 2019 WL 3859013, at *5 (W.D.N.Y. Aug. 16, 2019). "This type of constitutional claim 'falls outside of the scope of § 1226(e)' because it is not a matter of the IJ's discretionary judgment." *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 89 (D. Mass. 2018) (quoting *Jennings*, 138 S. Ct. at 841).

As a result, the Court concludes that it has jurisdiction. Mr. Singh's claim is properly before the Court on habeas review.

### 2. Whether DHS in fact applied an incorrect legal standard

Section 1226(a) is silent on which party bears the burden of proof at a custody redetermination hearing and the quantum of evidence necessary to satisfy that burden. *See* 8 U.S.C. § 1226(a). The BIA has interpreted § 1226(a) to place "[t]he burden . . . on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond." *In re Guerra*, 24 I. & N. Dec. 37; *accord In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA

18-CV-2741-GPC-MSB

1999) (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings").

In the § 1226(a) custody hearing context, however, "the Ninth Circuit has held that the Constitution mandates placing the burden of proof on the Government to show ineligibility for bail by clear and convincing evidence." *Aparicio-Villatoro*, 2019 WL 3859013, at *5 (citing *Singh v. Holder*, 638 F.3d 1196). In *Singh v. Holder*, the Ninth Circuit reasoned that "due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" 638 F.3d at 1203 (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008)). Relying on Supreme Court jurisprudence on the Constitutional safeguards required in other civil detention contexts, the Ninth Circuit held that due process demanded (1) the government carry the burden at § 1226(a) bond redetermination hearings, and (2) that it do so by clear and convincing evidence. *Id*. at 1204.[4]

The Second Circuit instituted a similar rule in *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *vacated*, --- U.S. ----, 138 S. Ct. 1260 (2018). In *Lora*, the Second Circuit borrowed the Ninth Circuit's constitutional avoidance jurisprudence in *Rodriguez v. Jennings* to read into § 1226(c) an implicit requirement that DHS conduct six-month custody determinations where it must establish by clear and convincing evidence the alien's propensity for flight risk or any danger to the community. After *Lora* was decided, the Supreme Court issued *Jennings*, rejecting the constitutional avoidance analysis on which the Second Circuit had relied. Thereafter, the Supreme Court vacated *Lora* and remanded in light of *Jennings*. On remand, however, *Lora* was dismissed as

---

[4]     *Singh,* 638 F.3d at 1204 ("Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection. (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)).

moot, as the petitioner had been released on bond in the interim, and the Second Circuit never addressed whether the evidentiary aspect of its holding survived *Jennings*. *See Aparicio-Villatoro*, 2019 WL 3859013, at *6.

"A number of district courts have taken up the question left open by the Supreme Court in *Jennings*, and 'there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified.'" *Id.* (quoting *Darko v. Sessions*, 342 F. Supp.3d 429, 434–36 (S.D.N.Y. 2018)).[5]  Because *Jennings* expressly addressed itself to the mandates of the INA, and not the Constitution, the procedural due process holdings in *Singh* and *Lora* still stand.  As the district court in *Cortez v. Sessions* observed:

> The [*Jennings*] Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue. Accordingly, the court declines to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth Circuit cases relying on *Singh's* reasoning.

318 F. Supp. 3d 1134, 1146–47 (N.D. Cal. 2018), *appeal dismissed*, No. 18-15976, 2018 WL 4173027 (9th Cir. July 25, 2018).[6]  Similarly, district courts have continued to

---

[5]    *Darko*, in turn, points to the following cases:  *Linares Martinez v. Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *32 (S.D.N.Y. Oct. 17, 2018)); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018); *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *10 (S.D.N.Y. July 25, 2018); *Frederic v. Edwards*, No. 18 Civ. 5540 (AT), Docket No. 13 (S.D.N.Y. July 19, 2018); *Pensamiento v. McDonald*, 315 F.Supp.3d 684, 692 (D. Mass. 2018); *Figueroa v. McDonald*, No. 18-CV-10097 (PBS), —— F.Supp.3d ——, ——, 2018 WL 2209217, at *5 (D. Mass. May 14, 2018); *Frantz C. v. Shanahan*, No. CV 18-2043 (JLL), 2018 WL 3302998, at *3 (D.N.J. July 5, 2018); *Portillo v. Hott*, 322 F.Supp.3d 698, 709 n.9 (E.D. Va. 2018); *Cortez v. Sessions*, 318 F.Supp.3d 1134, 1145-46 (N.D. Cal. 2018).

[6]    *See also D. v. Sec'y of Homeland Sec.*, No. 0:18-CV-1557-WMW-KMM, 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019) ("'[B]ecause the *Jennings* majority and dissent were focused on whether the statutes required bond hearings, declining to reach the constitutional question at issue here, the Court is unpersuaded that *Jennings* has any bearing on the appropriate procedures consistent with due process.'") (quoting *Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018)), *report and recommendation adopted as modified sub nom. Bolus A. D. v. Sec'y of Homeland Sec.,* 376 F. Supp.3d 959 (D. Minn. 2019).

accord *Lora* "significant persuasive weight." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) (holding that the Supreme Court's order to vacate turned on its statutory holding and therefore did not implicate *Lora*'s due process analysis).

The Court agrees with the reasoning of its sister courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that continued detention is justified at a § 1226(a) bond redetermination hearing.

Given the above, it is pellucidly clear that the framework used to adjudicate Mr. Singh's original bond redetermination hearing contravenes what Due Process demands. The IJ at the July 9, 2018 bond redetermination placed the burden of proving eligibility for release on Mr. Singh, who was required to "establish to the satisfaction of the Immigration Judge that he [] does not present a danger to persons or property, is not a threat to national security, and does not pose a risk of flight." (ECF No. 6-1, at 23.) The BIA, relying on regulations construing § 1226(a) and its decisions in *Guerra* and *Adeniji*, affirmed this allocation of the burden of persuasion on appeal.[7]

Accordingly, the Court agrees with Mr. Singh and finds that the government's bond redeterminations were legally incorrect and constitutionally deficient.

### 3. Prejudice

Having identified constitutional error, the Court next examines whether the error was prejudicial. *See Singh v. Holder*, 638 F.3d at 1205 (analyzing whether IJ's

---

[7]    As noted in *Pensimiento*, the government's reliance on BIA caselaw and regulations does not lend it any succor. While agency interpretations of the INA may hold weight in the context of a *Chevron* analysis, the instant case is concerned with Constitutional, not statutory, requisites. *Pensamiento*, 315 F. Supp. 3d at 693 ("Regardless of whether or not *Chevron* deference applies to the BIA's interpretation of the statute, the issue before the Court is whether the Constitution requires the government to bear the burden of proof in § 1226(a) bond hearings. A *Chevron* argument about statutory interpretation does not change the constitutional analysis.").

application of an erroneous evidentiary burden at bond hearing under § 1226(a) prejudiced alien detainee).[8]

The BIA directs IJs to consider the following factors in determining whether an immigrant is a flight risk or poses a danger to the community: (1) whether the immigrant has a fixed address in the United States; (2) the immigrant's length of residence in the United States; (3) the immigrant's family ties in the United States, (4) the immigrant's employment history, (5) the immigrant's record of appearance in court, (6) the immigrant's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses, (7) the immigrant's history of immigration violations; (8) any attempts by the immigrant to flee prosecution or otherwise escape from authorities; and (9) the immigrant's manner of entry to the United States. *Guerra*, 20 I&N Dec. at 40.

Mr. Singh had several positive equities in his favor. He was educated and graduated from high school, appeared proficient in English, and had previously worked in agriculture. He had a family friend in the United States who offered to sponsor him for the duration of his asylum application process. He had no criminal record or immigration violations, and was determined to have had a credible fear of returning to India. Nonetheless, the IJ found Mr. Singh an "extreme" flight risk for several reasons. The IJ was concerned about Mr. Singh's inability to provide his current passport, notwithstanding attempts by Mr. Singh's family's efforts to obtain the passport from the Mexican authorities. Mr. Singh also apparently misunderstood the Punjabi translator when Border Patrol agents questioned him about any previous immigration attempts, and had failed to disclose a 2013 application for a non-immigrant visa which has been denied.

---

[8] Not all courts, however, seem to require a showing of prejudice. *See Darko*, 342 F. Supp.3d at 436 (finding due process error due to IJ's imposition of burden of proof on alien detained under § 1226(a); granting habeas relief and ordering second individualized bond hearing without undertaking analysis of whether alien was prejudiced by erroneous burden of proof at first bond hearing).

The IJ also took issue with Mr. Singh's unresponsiveness to being questioned on his decision to seek asylum in the United States, where he had no family ties, when his father lived in Greece.

Mr. Singh's case for bond, then, presented both positive and negative equities. He was charged with the burden of proof and failed to "prove to the satisfaction" of the IJ that he was not a risk of flight. It is not unreasonable to think a different determination might have obtained if the government was forced to bear the burden of proof by a clear and convincing standard. For example, Mr. Singh's reliance on an expired passport and other forms of ID might not have borne as much significance if the government had to overcome Mr. Singh's explanation that his valid passport had been confiscated during the course of his journey to the United States. Similarly, Mr. Singh's facially unsatisfactory explanations about why he did not seek asylum in Greece—because his family had arranged his travels to the United States, and because he had not seen his father, who himself lacked lawful status in Greece, for years—might have found more purchase if the government had to bear the initial burden of proving that Greece was viable as an alternative destination. *See Aparicio-Villatoro*, 2019 WL 3859013 at *7 (finding alien prejudiced by IJ's application of incorrect evidentiary burden under § 1226(a) where the alien had a mixed bag of favorable and unfavorable equities).

To pluck, wholesale, a line from the Ninth Circuit: "The evidence that Singh was a danger and a flight risk was by no means overwhelming, so the standard of proof could well have affected the outcome of the bond hearing." *Singh v. Holder*, 638 F.3d at 1205. As in *Singh v. Holder*, this Court concludes that Mr. Singh suffered prejudice because it cannot "conclude that the clear and convincing evidence standard . . . would not have affected the outcome of the bond hearing." *Id.*

**B. Prolonged Detention without Constitutionally-Adequate Hearings**

Although the Court finds the first due process argument meritorious on its own, Mr. Singh's second due process claim provides an additional support for finding his detention unconstitutional.

Mr. Singh argues the government is obligated to offer *additional* bond redeterminations where, as here, considerable time has lapsed since an alien's initial bond redetermination hearing. In other words, he asserts that his detention cannot satisfy due process when his last bond redetermination hearing occurred almost on July 9, 2018, almost a year and two months ago.

Like Mr. Singh's first due process argument, this second argument also survives *Jennings*. "Nearly all district courts that have considered the issue agree that 'prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W. D. Wash. 2019) (citing cases).

To analyze whether due process requires a "periodic bond hearing, the Court must conduct an individualized due process analysis pursuant to the conventional *Mathews v. Eldridge*, 424 U.S. 319 (1976) factors." *Soto v. Sessions*, No. 18-CV-02891-EMC, 2018 WL 3619727, at *3 (N.D. Cal. July 30, 2018); *see also Singh v. Nielsen, No. 18-2490*, 2018 WL 4110549, at *3 (N.D. Cal. Aug. 29, 2018) (applying the Mathews balancing test to a request for a second hearing). "Due process is flexible and calls for such procedural protections as the particular situation demands. The three-part test articulated in *Mathews* requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court." *Id.*

### 1. Mr. Singh's Private Interest

Mr. Singh's interests in personal freedom are significant and obvious. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *See Zadvydas*, 533 U.S. at 690. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Mr. Singh has now been detained for 18 months, or approximately a year and a half.  It has been approximately 1 year and 2 months since his original bond determination.  The length of Mr. Singh's detention—what some courts have considered "the most important factor," *Banda*, 385 F. Supp. 3d at 1116—has been considerable.  Courts have found that failure to provide bond determinations in cases involving similar detention periods—i.e., 9 to 16 months—violate due process.[9]  However, this Court need not speculate whether "a certain length of detention, standing alone, would require an additional bond hearing." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 776 (N.D. Cal. 2019).  "It is sufficient for [this Court's] purposes . . . to find that the length of [Mr. Singh's] detention has been sufficiently long to establish strong private interest." *Id.*

### 2.  The Government's Interest

While the Court acknowledges the government's substantial interests in ensuring the presence of removable aliens at removal, "the governmental issue at stake in this [petition] is the ability to detain [Mr. Singh] without providing him with another bond hearing, not whether the government may continue to detain him." *Lopez Reyes*, 362 F. Supp. 3d at 777.  The government has not offered any indication that a second bond hearing would have outsize effects on its coffers.  *Id.* (noting government's failure to respond to petitioner's suggestion that the cost of an additional hearing would be "minimal").  Moreover, to the extent that the "government has an interest in allowing the

---

[9]     *See, e.g. Jamal v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019) (granting bond hearing after 19 months detention); *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (granting bond hearing after more than 10 months detention); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018) (granting bond hearing after more than 9 months detention); *Bermudez Paiz v. Decker*, No. 18-4759, 2018 WL 6928794, at *1 (S.D.N.Y. Dec. 27, 2018) (recommending granting bond hearing after 16 months detention); *Perez v. Decker*, No. 18-5279, 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018).

While the cited cases involved a failure to provide timely *initial* bond redetermination hearings, they are nonetheless probative of the reasonableness of detaining Mr. Singh without conducting a second bond redetermination.  Indeed, as the Court held *supra*, Mr. Singh's July 9, 2018 bond determination hearing was constitutionally inadequate.

IJ, who has the clearest access to the facts and witnesses, to assess credibility and adjudge issues within the context of immigration," *id.*, the Court is prepared to order that the second bond redetermination be before an IJ. Thus, "requiring the government to provide Petitioner with another bond hearing does not significantly undermine the government's interest in evaluating the evidence and in making those credibility determinations." *Id.*

Here, given the "minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether [Mr. Singh's] continued detention is justified, the Court concludes that the government's interest is not as weighty as [Mr. Singh's]." *Id.*

### 3. Value of Additional Safeguards

The value of additional safeguards—i.e., a second bond determination hearing conducted under the burden of proof specified by *Singh v. Holder*—is high. As discussed in some detail *supra*, a new bond determination hearing wherein the government bears the burden of demonstrating flight risk to a clear and convincing standard could well result in favor of release for Mr. Singh. Moreover, a new hearing would permit Mr. Singh to introduce into evidence additional facts and arguments which he was unable to articulate at his initial custody hearing. (*See* ECF No. 6-1, at 32 (BIA order affirming IJ) (noting but declining to consider "additional evidence" presented by Mr. Singh on appeal).) The Court is satisfied that an additional bond hearing would provide additional safeguards under these circumstances, and that due process under *Mathews* requires the government to provide Mr. Singh with a second custody determination.[10]

### C. Conclusion as to Due Process; Remedy

The Court finds that Mr. Singh identified two due process violations with respect to his continued detention. Specifically, Mr. Singh succeeded in showing that his initial

---

[10] To be clear, the Court "notes that that is *not* making a finding that the mere passage of time requires a second bond hearing." *Lopez Reyes*, 362 F. Supp. 3d at 777. Instead, it is the constitutional inadequacy of Mr. Singh's July 9, 2018 bond redetermination hearing, coupled with the passage of time since that hearing, that require an additional bond hearing to satisfy due process. *Id.*

bond redetermination violated due process, and also demonstrated that, under *Mathews* and the particular facts of his case, he was due an additional redetermination hearing.

The Court turns to the question of remedy. Although Mr. Singh has requested immediate release, the Court believes the present situation may be remediated by granting the alternate request for a "constitutionally adequate hearing" as to bond. (ECF No. 1, at 16.) *See, e.g.*, *Lopez Reyes*, 362 F. Supp. 3d at 778 (granting relief and ordering the government to either hold a timely bond hearing or release the petitioner); *Pensamiento*, 315 F. Supp. 3d at 693 (allowing the habeas petition and ordering that petitioner not be re-detained unless an IJ holds a new custody hearing with the burden placed on the government). The Court will therefore grant the habeas petition with respect to its request for a new hearing which comports with due process.

## V. Conclusion

In view of the above, the Court **GRANTS** Mr. Singh's habeas petition. The government is **ORDERED** to hold a new custody hearing, **within fifteen (15) days** of the entry of this Order, or release Mr. Singh from detention. This hearing must be conducted in conformity with *Singh v. Holder*, which places the burden on the government to prove, by clear and convincing evidence, that Mr. Singh is a flight risk.

Mr. Singh has requested attorney's fees and costs under the EAJA, which requires an "award to a prevailing party . . . [of] fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d). The Court will consider a motion from Mr. Singh requesting (and substantiating) reasonable fees and costs under the EAJA, filed no later than **thirty (30) days** after the entry of this order. At that juncture, the burden would be on the government to show that its litigation position was substantially justified. *See Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001).

Dated:  August 30, 2019

Hon. Gonzalo P. Curiel
United States District Judge